**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| JOSEPH REIVER, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. _____ |
| | : | |
| v. | : | **COMPLAINT** |
| | : | |
| THE CITY OF NEW YORK, | : | |
| | : | |
| Defendant. | : | |

**COMPLAINT AND JURY DEMAND**

Plaintiff JOSEPH REIVER ("Plaintiff"), by his undersigned attorneys, alleges for his complaint herein against Defendant THE CITY OF NEW YORK. ("Defendant"), as follows:

**NATURE OF THE ACTION**

1. This action arises under the Visual Artist Rights Act (VARA), 17 U.S.C. § 106A, *et seq*. and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

2. Plaintiff is seeking

   (a) a declaration that he has the right under VARA to prevent the intentional or grossly negligent destruction and/or intentional distortion, mutilation, or other modification of Elizabeth Street Garden (the "Garden");

   (b) a preliminary injunction and then a permanent injunction under VARA to prevent the intentional or grossly negligent destruction and/or intentional distortion, mutilation, or other modification of the Garden; and

   (c) continued access to the Garden, by Plaintiff and the public, to maintain the Garden and the social sculpture aspect of the Garden.

1

3.      The Garden, located at 207 Elizabeth Street, New York, NY 10012, in the neighborhood of Little Italy, in New York, New York, is a beautifully landscaped, publicly accessible open green space comprising 20,110 square feet, incorporating numerous sculptural elements.

4.      The Garden, jointly created by Plaintiff and his late father Allan Reiver (hereinafter "Allan"), is a single unified sculptural work of visual art, comprised of carefully selected sculptural elements, complemented by plantings specifically curated to accentuate them, thematically integrated into the foundation, to create a neo-classical theme mixed with a sense of timelessness.

5.      The physical space of the Garden hosts a hub of artistic and communal activity, initiated and organized by Plaintiff, making the Garden an exemplary social sculpture, deeply tied to public interaction, communal stewardship, and the physical environment.

6.      The Garden has achieved recognition as a work of recognized stature, both as a physical work of visual art and as an example of social sculpture inspiring prominent members of the artistic community.

7.      Notwithstanding such recognition, Defendant plans to destroy the Garden by constructing on the property a 7-story mixed-use building on the site including 123 units of housing. The proposed construction and related clearing of the lot, will destroy the Garden and/or distort, mutilate, or otherwise modify the Garden, which will be prejudicial to the honor and reputation of Plaintiff.

8.      VARA, however, protects the rights of artists like Plaintiff, safeguarding their works from "any intentional distortion, mutilation, or other modification … which would be

prejudicial to his or her honor or reputation." 17 U.S.C. § 106A(a)(3)(a). It further protects works of recognized stature from "any intentional or grossly negligent destruction." 17 U.S.C. § 106A(a)(3)(B). Defendant's plans threaten Plaintiff's rights under VARA. To protect the Garden from mutilation or destruction, and thereby to ensure the future of his creation, Plaintiff brings this action for declaratory and injunctive relief.

## THE PARTIES

9. Plaintiff Joseph Reiver is a citizen of the State of New York and a resident of New York, New York. He is the joint owner and joint author of the work of visual art described as the Garden, which is the subject matter of this action.

10. Plaintiff is the Executive Director of Elizabeth Street Garden, Inc. an independent, community lead, 501(c)(3) not-for-profit organization, managing and maintaining the Garden, the work of visual art that is the subject of this action. Elizabeth Street Garden's mission is to protect & preserve the magic of Elizabeth Street Garden as a public community green space and to determine how the City of New York together with the community can protect this space for generations to enjoy. *See*, https://www.elizabethstreetgarden.com/.

11. The City of New York is a municipality, located in the State of New York. It is the lessor of the lot on which the Garden is located.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the action arises under VARA 17 U.S.C. § 106A, *et seq.* and the Declaratory Judgment Act 28 U.S.C. §§ 2201 and 2202.

13. This Court has personal jurisdiction over the Defendant because the Defendant is a municipality organized and existing in this judicial district.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because the Plaintiff and the Defendant reside in this judicial district, the events or omissions giving rise to the claim occurred in this judicial district, and the property that is the subject of the action is situated in this district.

## STATUTORY BACKGROUND

15. Congress enacted VARA in 1990, as an amendment to the Copyright Act. VARA extends to visual artists the legal protection of their moral rights of attribution and integrity. 17 U.S.C. § 106A.

16. Since June 1, 1991, authors of works of visual art have had the right to prevent any intentional distortion, mutilation, or other modification of that work which would be prejudicial to his or her honor or reputation. 17 U.S.C. § 106A(a)(3)(A),

17. Works of "recognized stature" are further protected from "intentional or grossly negligent destruction". 17 U.S.C. § 106A(a)(3)(B).

18. The Copyright Statute defines a "work of visual art", in relevant part as a painting, drawing, print, or sculpture. 17 U.S.C. § 101.

19. The author of a work of visual art has the rights of attribution and integrity in that work, whether or not the author is the copyright owner. Where the work of visual art is a joint work, each of the co-authors of the joint work of visual art are co-owners of the rights of attribution and integrity conferred in that work. 17 U.S.C.§ 106A(b).

4

## **THE CREATION OF THE WORK OF VISUAL ART**

20. During the 1970's, Allan, Plaintiff's late father, had restored several derelict properties in Denver, Colorado, by incorporating in and around them culturally and historically important architectural artifacts and sculptures.

21. Although Allan had no formal artistic training, by virtue of this experience he had become a representative of the Outsider Art School, a legitimate school of art distinguished predominantly by work created by self-taught artists like Allan.

22. After relocating to New York in 1989, Allan further developed his artistic skills to design and create a garden on a Metropolitan Transit Authority lot on the upper east side. A photograph of this garden is attached as Exhibit 1.

23. In February of 1991, Allan, through his wholly owned company Elizabeth Street, Inc., obtained a month-to-month lease of the lot from Defendant.

24. The lot was in disrepair, a dismal junk yard.

25. Notwithstanding the condition of the lot, Allan saw an opportunity to build on his Denver and upper east side experience to create an oasis of tranquility in the middle of a dense urban environment.

26. Allan initially cleared the dismal junk yard creating a blank canvas on which to create the work.

27. Commencing, in or about the Fall of 1991, Allan took first steps to implement his vision.

28. Initially Allan focused on the foundational structure of the Garden.

29. He first designed and installed the front lawn and planting the two pear trees and designed and installed a broad gravel walkway that runs from the entrance of the Garden, through the east-west axis of the lot, terminating at a barn-like lean-to in the back. (Contemporaneous photos, showing the cleared lot and the early stages of the Garden design, and a blueprint of the garden plan, are attached as Exhibit 2.)

30. The walkway was complemented by the strategic placement of prominent stone and granite balustrades bordering it for most of its length on each side. Allan salvaged the historically significant balustrades, designed by French landscape architect Jacques-Henri-Auguste Gréber, from Lynnewood Hall, a neo-classical revival mansion located in Etkins Park, Pennsylvania.

31. Substantially all of the sculptural elements added to the foundation were selected to create an integrated whole sculptural work of visual art, emphasizing the neo-classical theme, mixed with a sense of timelessness, that transports visitors physically, mentally, and spiritually from the dense urban environment in which the Garden is located.

32. To emphasize the timeless nature of the Garden as a work of visual art, all of the sculptural elements, as well as the balustrades, were salvaged and reclaimed.

33. These sculptural elements, placed throughout the Garden, comprise figure sculptures, primarily of iconic animals or mythical creatures, an iron gazebo, designed by the Olmsted Brothers for Burrwood, the former home of Walter Jennings, one of the original directors of the Standard Oil Company, Greek style columns, and the iconic iron gates at the entrance of the Garden.

34.     Each sculptural element was selected and integrated into the Garden to enhance the neo-classical theme. Thus, Roman style sphinxes are combined with the first balustrade section to act as guardians of the entrance and exit. The standing lions placed on either side of the main walkway are there as guardians to the entrance with more aggressive features showing their teeth.  Further behind at the center of the garden there are the two resting lions considered by many to be the most iconic element of the garden.

35.     The fixed inorganic elements of the Garden are complemented by plantings that have specifically been curated to accentuate the sculptural elements. For example, creeping ivy has been specifically planted to grow along the base of both the resting lions so that when the ivy grows out it is trained to grow along the lions mane and create a living Ivy mane for the summer season.

36.      The selection of plantings takes into consideration seasonal changes incorporating that into the work of art. Examples include a specific ivy has been planted along the balustrade balcony for the summer along with a creeping clematis vine that flowers white in the fall and grows along a cast iron piece that has been attached to the balcony and creeping hydrangea vines plated to grow up and over the stone colonnade located next to the gazebo on the front lawn.

37.     There is a consistent line of the work that runs through the Garden bordering main walkways and intentionally creating small pocket areas to "find" or sit in.  The main portion of the balustrade tees off to create two sections where people can walk through gardening beds. The foundational elements give way to these pocket areas with the intention of inviting visitors to interact with the work, sit amidst it, and move through it.

38. The physical components of the Garden are enhanced and complemented by the collective and participatory process through which the public interacts with the Garden.

39. In or about 2005, after the foundational structure of the Garden was substantially completed, the public was invited to and visit and enjoy the Garden through Allan's gallery, located next door to the Garden, where statues and replicas of statues were offered for sale. Once Elizabeth Street Garden, Inc. assumed management of the Garden, all sales ceased.

40. Since in or about 2013, once Allan and Plaintiff, with the assistance of volunteers, ensured safety to the public and security for the Garden, the social aspect of the Garden was significantly expanded, engaging the community as active participants in its evolving artistic narrative.

41. Examples of such engagement, initiated and organized by Plaintiff, include without limitation, open calls to artists, which showcase artwork inspired by the Garden, musical performances, poetry readings, movie screenings, wellness classes like tai chi and yoga, tea ceremonies, educational workshops teaching sustainable stewardship and planting in the Garden to local public-school students, (K-5th grade), and equinox and solstice celebrations.

42. These programs, hosted in the Garden, reflect the principles of social sculpture, transforming the physical space into a hub of artistic and communal activity, making the Garden an exemplary social sculpture, deeply tied to public interaction, communal stewardship, and the physical environment.

43. Continued access to the Garden, by Plaintiff and the public, is required to maintain the social sculpture aspect of the Garden.

44. Current images of the Garden are shown in Exhibits 3a-3c.[1] *Also see*, https://www.elizabethstreetgarden.com/3dscan.

### THE GARDEN IS A WORK OF VISUAL ART ELIGIBLE FOR VARA PROTECTION

45. The integration of the sculptural elements, all featuring a neo-classical theme, with the Garden's foundational elements, characterized by the principal east-west principal path and the prominent balustrades, supplemented by the plantings, create a single unified and thematically integrated sculpture.

46. The singularity of the sculpture that is the Garden is demonstrated by the thematically consistent theme of the sculptural elements that comprise the work, the combination of sculptural elements, such as to Roman style sphinxes, with the balustrades, to form a single sculptural element, and the use of organic matter to complement the sculptural elements.

47. The resulting sculpture, comprising of foundational elements, complemented by carefully planned interrelated sculptural elements, constitutes a single unified sculptural work of art, paying tribute to classical landscape designs in the tradition of neo-classical gardens.

48. The Garden is a unified whole that is inextricably bound to the location of the lot. The removal of any of the physical elements that comprise the Garden will destroy, distort, mutilate, or otherwise modify the integrity of the Garden.

49. As such, the Garden is a sculpture and a social sculpture eligible for protection under VARA.

---

1 This Exhibit, as well as Exhibits 8, 13, and 17, is divided into multiple parts to conform to the size limitation for exhibits, mandated by this Court.

**PLAINTIFF'S CO-AUTHORSHIP OF THE WORK OF VISUAL ART**

50. The Garden is a joint work of visual art designed and created by Allan and Plaintiff.

51. Since as early as 2009, Plaintiff joined Allan, in the design of the Garden, culminating in its present integrated whole.

52. Plaintiff and Allan's joint authorship continued until Allan's death in May of 2021. Since that time, Plaintiff has assumed exclusive responsibility of continued improvement to the design of the Garden.

53. During the early phase of their joint authorship, Allan passed on his acquired experience in repurposing and placing reclaimed antique sculptures and in garden design to Plaintiff. As a result of this training, coupled with his experience in implementing Allan's and Plaintiff's joint vision for the Garden, Plaintiff has become a recognized representative of the Outsider Art School, in his own right.

54. Plaintiff also has received recognition as a photographer whose works have been featured in Vogue Magazine Japan (https://www.vogue.co.jp/fashion/article/sakurako-suzuki-heven-coperni-glass-bags), Anthropologie (https://www.anthropologie.com/stories-nyc-soho), and displayed on his website https://www.josephreiver.com/.

55. Plaintiff's contributions to the joint work include:

   a. the placement determination of statues in specific areas of the Garden;
   b. designing a tree area and planting of specific trees in accordance with the design;

10

    c. the design and placement determination of gates installed on the paved area on the north side of the center of the Garden;

    d. the design and installation of several slated pathways around the Garden;

    e. the design and placement determination of the balcony area of the Garden;

    f. the floral and plant design of the Garden, including flowerbed designs;

    g. the organizing and initiation of public events inviting the public to engage with and interact with the Garden.

56. Plaintiff was assisted, and continues to be assisted, by a cadre of over 500 volunteers, who, under Plaintiff's supervision as Executive Director of the managing garden nonprofit help to tend and maintain the design and installation of the elements of the Garden and keep the Garden open and accessible to the public.

57. Plaintiff is the co-author of the artistic elements comprising the present integrated whole of the Garden and has jointly owned, together with his co-author Allan, and continues to own, all of the moral rights in the work of visual art that is the Garden.

## THE GARDEN IS A WORK OF RECOGNIZED STATURE

58. Gardens are recognized as legitimate art forms by the art community.

59. Gardens are identified and recognized as works of visual art in museums and in public spaces.

60. The Garden that is the work of visual work Plaintiff seeks to preserve, has achieved recognition as a work of visual art by recognized artists, who incorporated it in their work.

61. The artistic significance of the Garden has been recognized by prominent members of the artistic community, including filmmaker Martin Scorsese, Oscar winning actor Robert de Niro, singer, songwriter, poet, painter, author and photographer Patti Smith, and renowned contemporary artists JR and Dustin Yellin, confirming that the selection, form and placement of the sculptural elements incorporated into the environment of the Garden constitute a work of visual art. Letters of support by Mr. Scorsese, Mr. de Niro and Ms. Smith are attached as Exhibit 4.

62. The significance of the Garden has been recognized by the public, local seniors, and local businesses and organizations, many thousands of letters have been sent to Mayor Adams and his administration urging them to save the garden. *See*, https://www.elizabethstreetgarden.com/supporters.

63. The Garden has inspired artists to create their own art. *See*, https://www.elizabethstreetgarden.com/calltoartists

64. The artistic nature of and social structure of the Garden also has been recognized by the public, private and governmental entities, and the press, as follows:

   a. https://3quarksdaily.com/3quarksdaily/2024/08/the-death-and-life-of-a-great-garden.html#more-262198 (Exhibit 5)

   b. https://www.nytimes.com/interactive/2022/10/06/travel/things-to-do-nyc.html (Exhibit 6)

   c. https://news.artnet.com/art-world/elizabeth-street-garden-faces-destruction-2507715 (Exhibit 7)

   d. https://news.artnet.com/art-world/art-date-1446703 (Exhibits 8a-8b)

   e. https://www.theatlantic.com/books/archive/2024/07/garden-against-time-olivia-laing-book-review/678928/ (Exhibit 9)

12

    f. https://www.thrillist.com/travel/nation/elizabeth-street-sculpture-garden-nyc (Exhibit 10)

    g. The 15 Best Gardens in New York City (foursquare.com) (Exhibit 11)

    h. https://www.theartnewspaper.com/2024/08/30/neighbours-fight-to-save-soho-sculpture-garden (Exhibit 12)

    i. https://www.nytimes.com/2024/08/09/realestate/elizabeth-street-garden-letter-campaign.html (Exhibits 13a-13d)

    j. https://www.instagram.com/lonelyplanet/reel/DFgLlsOC_xJ/

65. The Garden has been recognized as a travel destination. *See, New York City Like a Local* (Exhibit 14), *111 Places in New York That You Must Not Miss* (Exhibit 15), and *Unknown New York, An Artist Uncovers the City's Hidden Treasures*, p. 72 (Exhibit 16).

## **DEFENDANT'S PLAN TO DESTROY THE GARDEN**

66. At no time did Defendant object to the changes to the lot, including the creation of the Garden, by Allan and/or Plaintiff.

67. At no time did Defendant object to the extensive public programming in the Garden, initiated and organized by Plaintiff.

68. In or about 2016, Defendant solicited a Request for Proposals for a "mixed-use affordable housing development for seniors" to be constructed at the site of the Garden.

69. The proposal, accepted and approved by Defendant, seeks to construct a 7-story, mixed-use building containing approximately 123 units of housing, ground floor retail, and office space for a developer (hereinafter the "Project"). The proposed construction of the Project

13

and related clearing of the lot, will destroy the Garden and/or distort, mutilate, or otherwise modify the Garden, which will be prejudicial to the honor and reputation of Plaintiff.

70. Throughout Defendant's efforts to destroy the Garden, Plaintiff diligently worked with the local, non-profit, Community Board as well as with elected officials, and private building managers and owners, to identify alternative sites in the district to construct housing, However, Defendant declined to adopt such alternate sites.

71. Plaintiff further presented a proposal to Mayor Adams and the NYC Housing Preservation Department for an alternate resolution that would avoid the destruction of the Garden. A copy of the proposal is attached as Exhibits 17a-17b. Mayor Adams and the NYC Housing Preservation Department and Defendant have not acted on this proposal.

72. Plaintiff further has worked with Councilmember Christopher Marte's office on a proposal involving privately owned sites that could each provide 123 or more affordable housing units and additional housing. The owners of these sites are ready and willing to work with Mayor Adams, First Deputy Mayor Maria Torres-Springer, and the Housing Department. This is a true solution for everyone that has the potential to achieve even more housing without any loss to the community. *See*, https://www.elizabethstreetgarden.com/privateproposal shown on Exhibit 18 attached hereto.

73. The destruction of the Garden, resulting from the proposed construction of the Project and related clearing of the lot by the Defendant, is intentional or grossly negligent.

74. The destruction of the Garden, a work of recognized stature, resulting from the proposed construction of the Project and related clearing of the lot by the Defendant, is a violation of VARA.

14

75. The distortion, mutilation, or other modification of the Garden, resulting from the proposed construction of the Project and related clearing of the lot by the Defendant, is intentional.

76. The distortion, mutilation, or other modification of the Garden, resulting from the proposed construction of the Project and related clearing of the lot by Defendant will be prejudicial to Plaintiff's honor or reputation.

### **THE EXHAUSTION OF LEGAL EFFORTS TO SAVE THE GARDEN**

77. Allan, Renee Green, a local resident and the chair of the Board of Directors of Elizabeth Street Garden, Inc., and related parties (as well as Friends of Elizabeth Street Garden, in a separate action) challenged the implementation of the Project in the New York Supreme Court on the ground, *inter alia*, that it failed to comply with the New York State Environmental Quality Review Act (SEQRA). While initially successful, at the Supreme Court level, in obtaining an order requiring Defendant to conduct a full Environmental Impact Statement before proceeding with the Project, this order was reversed by the New York State Appellate Division, First Department, on June 27, 2023. The New York Court of Appeals, on June 18, 2024, affirmed the order of the New York State Appellate Division, First Department, with a strong dissent by Judge Rivera. There is no further legal recourse available to the proponents for the Garden under SEQRA to stay the development of the Project.

78. In other legal proceedings, Defendant has terminated the lease of Elizabeth Street, Inc. to the lot, effective October 31, 2021. By decision, verdict and order, dated May 8, 2024, the Civil Court of the City of New York awarded the City of New York a final judgment of possession and a money judgment as against Elizabeth Street, Inc. The court stayed the execution

of the warrant of eviction for four months and ordered an earliest execution date of the warrant of September 11, 2024. The Notice of Eviction was served on October 2, 2024.

79. Elizabeth Street, Inc., on May 13, 2024, filed a Notice of Appeal of the May 8, 2024 decision, verdict and order with the New York State First Judicial Department Appellate Term, Supreme Court and also sought a stay of the eviction, pending the final disposition of the appeal. That motion was granted on October 31, 2024 with oral argument held on February 3, 2025.

80. Although Elizabeth Street, Inc. has been granted a temporary stay of eviction, Defendant has indicated that, if it prevails on appeal, it intends to obtain and execute a further warrant of eviction and proceed with the Project.

81. Once evicted, Plaintiff and the community/public will be denied further access to the Garden. This lack of access will make it impossible for Plaintiff to maintain the Garden and the social sculpture aspect of the Garden.

82. If the Project proceeds, it will result in the destruction of the Garden and/or the distortion, mutilation, or other modification of the Garden, which will be prejudicial to Plaintiff's honor and reputation.

## CLAIM FOR RELIEF
**(Visual Artists Rights Act and Declaratory Judgment Act)**

83. Plaintiff hereby realleges and incorporates as if fully set forth hereto, the allegations of ¶¶ 1-82 inclusive.

84. The Garden constitutes a "work of visual art" as defined by 17 U.S.C. § 101.

85. The Garden is a joint work of visual art, Plaintiff being a joint author thereof with his late father Allan Reiver.

16

86. The author of a work of visual art, including a joint author, has the rights of attribution and integrity under 17 U.S.C. § 106A(a)(3) including the right to prevent any intentional distortion, mutilation, or modification of the work which would be prejudicial to his or her honor or reputation, and any intentional distortion, mutilation, or modification of that work is a violation of that right.

87. The Garden has been the subject of public acclaim since its creation and, therefore, is a work of "recognized stature" under VARA. 17 U.S.C. § 106A(a)(3)(B).

88. Because the Garden is a work of "recognized stature", any intentional or grossly negligent destruction of that work is a violation of Plaintiff's rights under VARA.

89. Plaintiff's reputation as a visual artist, will be irreparably harmed if the Garden is distorted, mutilated, modified, or destroyed. The destruction of the Garden would be "prejudicial" to Plaintiff's "honor or reputation." 17 U.S.C. § 106A(a)(3)(A).

90. Defendant has acted, or plans to act, intentionally, grossly negligently, and in willful disregard of Plaintiff's rights under VARA.

91. Because Defendant has threatened and continues to threaten to violate Plaintiff's rights under VARA, there is an actual controversy between the parties within this Court's jurisdiction and a need for this Court to declare the rights and legal relations of the parties under VARA.

92. Plaintiff is entitled to preliminary and permanent injunctive relief barring Defendant from moving forward with the development of the Project, or otherwise, which will destroy, distort, mutilate, or otherwise modify the Garden.

93. The destruction, distortion, mutilation, or other modification of the Garden, if not enjoined, will be permanent.

94. Plaintiff has no other adequate remedy at law.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare that,

   1. Plaintiff has the right under the Visual Artists Rights Act to prevent any intentional or grossly negligent destruction, and any intentional distortion, mutilation, or other modification of the Garden for his lifetime;

   2. The Garden is a work of visual art protected under the Visual Artists Rights Act;

   3. the Garden is a work of visual art of recognized stature;

   4. Plaintiff and the public shall continue to have access to the Garden to maintain the social sculpture aspect of the Garden.

B. Granting and/or awarding Plaintiff,

   1. a preliminary and permanent injunction enjoining Defendant, its agents, attorneys, and employees, and all those acting in concert with them, from taking any action with regard to the Garden that will destroy, distort, mutilate or otherwise modify the Garden;

   2. a preliminary and permanent injunction enjoining Defendant, its agents, attorneys, and employees, and all those acting in concert with them, from taking any action with regard to the Garden that will deny continued access to the Garden, by

Plaintiff and the public, to maintain the Garden and the social sculpture aspect of the Garden;

3. a monetary judgment against Defendant for such actual and/or statutory damages as the Court may determine; and

4. reasonable costs, expenses and attorney's fees, and such other and further relief as the Court considers just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff JOSEPH REIVER demands a trial by jury on all issues so triable.

By: _/s/ Steven J. Hyman_  
Steven J. Hyman (2097)  
Oliver R. Chernin (4516)  
McLAUGHLIN & STERN, LLP  
260 Madison Avenue  
New York, NY 10016  
Phone (212) 448-1100  
shyman@mclaughlinstern.com  
ochernin@mclaughlinstern.com  
*Attorneys for Plaintiff*

_/s/ Norman Siegel_  
Norman Siegel (6850)  
SIEGEL TEITELBAUM  
& EVANS, LLP  
260 Madison Avenue, 22nd Floor  
New York, NY 10016  
Phone (212) 455-0300  
nsiegel@stellp.com  
*Attorneys for Plaintiff*

New York, New York  
Date:   February 18, 2025