UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
JOSEPH REIVER,

                        Plaintiff,

         -against-

THE CITY OF NEW YORK,

                        Defendant.
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/20/2025

1:25-cv-1376-MKV

OPINION AND ORDER
DENYING APPLICATION FOR
EMERGENCY RELIEF

MARY KAY VYSKOCIL, United States District Judge:

For more than six years, the current occupants of the property located at 207 Elizabeth Street in Nolita (the "Elizabeth Street Garden" or the "Garden") have argued unsuccessfully in New York state court that New York City cannot proceed with its plan to eject them. *See Elizabeth St. Garden, Inc. v. City of N.Y.*, 42 N.Y.3d 992, 995 (2024); *City of New York v. Elizabeth St. Inc.*, 85 Misc. 3d 131(A) (1st Dep't 2025). Now Plaintiff contends that this Court can "save" the Elizabeth Street Garden [ECF No. 12-2 ("Pl. Mem.") at 7]. Plaintiff is incorrect.

The role of a federal court is "modest." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 346 (2006).[1] A federal district court judge is constrained to decide cases and controversies between parties by applying the laws enshrined in statutes and controlling precedents to the facts established by the evidence before her. Here, Plaintiff contends that the City cannot use property it owns in the manner its democratically elected representatives see fit because federal law protects Plaintiff's moral rights to preserve the Elizabeth Street Garden. *See* Pl. Mem. at 11 ("that the Garden is located on a leased property and that Defendant now has been given the green light to evict the lessee is a non-issue").

---

[1] *See* William Pryor Jr., *The Perspective of a Junior Circuit Judge on Judicial Modesty*, 60 FLA. L. REV. 1007, 1015 (2008).

1

The Visual Artist Rights Act of 1990 (VARA), 17 U.S.C. §§ 106A, *et seq.*, empowers the "author" of a protected work of "visual art" to bring a lawsuit to "prevent" the intentional or negligent "destruction of a work of recognized stature." 17 U.S.C. § 106A(a)(3)(B). Fatal to Plaintiff's cause, however, VARA expressly limits its protections to specified categories of traditional media of visual art. *See* 17 U.S.C. § 101 ("A 'work of visual art' is . . . a painting, drawing, print, or sculpture," or "still photographic image produced for exhibition purposes only"); *Carter v. Helmsley-Spear, Inc.*, 71 F.3d 77, 84 (2d Cir. 1995). As Plaintiff concedes, several federal courts have been asked to apply VARA to gardens, but none has done so. *See Kelley v. Chicago Park Dist.*, 635 F.3d 290, 306 (7th Cir. 2011) ("garden is neither 'authored' nor "fixed' in the senses required for . . . protection under VARA"); *Eng. v. BFC&R E. 11th St. LLC*, No. 97-cv-7446 (HB), 1997 WL 746444, at *3 (S.D.N.Y. Dec. 3, 1997), *aff'd sub nom.*, *Eng. v. BFC Partners*, 198 F.3d 233 (2d Cir. 1999); *see also Phillips v. Pembroke Real Est., Inc.*, 459 F.3d 128, 137 (1st Cir. 2006). Moreover, Plaintiff is not the "author" of the Elizabeth Street Garden, as required to bring suit under VARA, 17 U.S.C. § 106A(a), not merely because it defies common understanding to speak of the author of a garden, but also because the evidence establishes that Plaintiff did not create the Elizabeth Street Garden.

Accordingly, as set forth below, Plaintiff's request for emergency relief to halt his eviction is DENIED because he has no likelihood of success on the merits of his VARA claim. Furthermore, while there clearly is public interest in preserving the Elizabeth Street Garden, there is also a strong public interest in bringing finality to a dispute that has already been litigated and lost.

## I. PROCEDURAL HISTORY

Plaintiff Joseph Reiver initiated this case against the City of New York by filing a complaint which attaches numerous exhibits [ECF Nos. 1 ("Cmpl."), 1-1–1-26]. The Complaint asserts a

2

claim under the Visual Artist Rights Act of 1990 (VARA), 17 U.S.C. §§ 106A, *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Cmpl. ¶¶ 1, 83–94. Plaintiff seeks a "declaration that he has the right under VARA to prevent the intentional or grossly negligent destruction" of the Elizabeth Street Garden and injunctive relief "barring" the City from "moving forward" with its plan to build a "mixed-use affordable housing development for seniors" on the lot that is currently occupied by the Garden. Cmpl. ¶¶ 2, 68, 92.

Weeks later, Plaintiff filed an application for emergency relief seeking a temporary restraining order and a preliminary injunction [ECF Nos. 12, 12-1, 12-2, 12-3]. The application consists of: a proposed Order To Show Cause [ECF No. 12]; a memorandum of law [ECF No. 12-2 ("Pl. Mem.")]; the declaration of Plaintiff Joseph Reiver [ECF No. 12-1 at 2–9 ("Reiver Decl.")]; the declaration of Mara Miller, the author of a book entitled *The Garden as an Art* [ECF No. 12-1 at 10–24 ("Miller Decl.")]; the declaration of Klaus Biesenbach, an art museum director [ECF No. 12-1 at 25–27 ("Biesenbach Decl.")]; the declaration of an artist who goes by the name "JR" [ECF No. 12-1 at 28–31]; the declaration of Jeffrey Brodie, an executive at a history museum [ECF No. 12-1 at 32–34]; the declaration of Noah Chasin, an historian and critic of art and architecture [ECF No. 12-1 at 35–39 ("Chasin Decl.")]; the declaration of Patti Smith, a New York-based artist [ECF No. 12-1 at 40–43]; and notice of an eviction on March 24, 2025 [ECF No. 12-3].

The Court issued a scheduling order in response to Plaintiff's application for emergency relief [ECF No. 13 ("Scheduling Order")]. Specifically, the Court scheduled a hearing and set deadlines for the City to file an opposition and for both parties to file certain materials in advance of the scheduled hearing. *See* Scheduling Order.

The City timely filed its opposition to Plaintiff's application for emergency relief [ECF Nos. 16, 17, 18]. The opposition consists of: the City's memorandum of law [ECF No. 18 ("Def.

3

Mem.")]; the declaration of defense counsel and sixteen exhibits attached thereto [ECF No. 16 ("Zilkha Decl")], including the lease agreement for the property occupied by the Elizabeth Street Garden [ECF No. 16-1 (the "Lease")] and a transcript of Plaintiff's prior sworn testimony in state court during litigation over the City's efforts to evict the Garden from the property [ECF No. 16-9 ("Reiver Tr.")], among other exhibits; and the declaration of Michael Sandler, who oversees the development of affordable housing on City-owned property and is involved in the plan to create affordable housing for senior citizens on the property currently occupied by the Garden, a project the City calls "Haven Green" [ECF Nos. 17 ("Sandler Decl."), 17-1, 17-2].

Thereafter, pursuant to the Court's earlier Scheduling Order, the parties filed witness lists and exhibit lists [ECF Nos. 22, 23]. After reviewing the parties' witness lists, the Court issued a further Order about the logistics of the scheduled hearing [ECF No. 25 ("March 16 Order")]. In particular, the Court cited its Individual Rules of Practice in Civil Cases, which require parties to submit "affidavits constituting the direct testimony" of any witnesses for a hearing on a preliminary injunction and state that "[o]nly those witnesses who will be cross-examined need to appear" to testify live. Rule 7(C)(i); *see* March 16 Order; Rule 4(D). The Court set a deadline for the parties to file a joint letter stating "which affiants must be produced for cross-examination," if any, and whether there were objections to any exhibits. March 16 Order.

The parties filed the joint letter about the contemplated evidence [ECF No. 26 ("JL")]. Both parties represented that they did not require the production of any affiant for the other side for cross-examination and did not object to the introduction of any of the exhibits listed in the other party's exhibit list. *See* JL at 1–2. Plaintiff, however, proposed to offer live direct testimony from three witnesses—a newly designated expert witness, a newly designated fact witness, and Plaintiff. *See id.* The City objected. *See id.*

The Court issued a detailed Order canceling the hearing [ECF No. 27 ("March 18 Order")]. The Court explained that, pursuant to its Individual Rules and March 16 Order, Plaintiff was not permitted to offer live direct testimony, and Plaintiff had not shown good cause for belatedly designating a new expert witness and a new fact witness. March 18 Order at 4; *see id.* at 4–5. The Court further explained that, since neither party wished to cross-examine any witnesses or objected to any exhibits, and the Court was convinced that Plaintiff's application for emergency relief is amenable to resolution "on the papers," it was not necessary to hold the scheduled evidentiary hearing. *Id.* at 5 (quoting *St. Joseph's Hosp. Health Ctr. v. Am. Anesthesiology of Syracuse, P.C.*, — F.4th —, 2025 WL 794367 (2d Cir. Mar. 13, 2025)). The Court afforded both sides a final opportunity to supplement the record before the Court with any exhibits they had identified in their exhibit lists but had not previously submitted to the Court. *Id.* at 6. Plaintiff submitted a number of exhibits, including the resumes of several of its affiants [ECF No. 28].

## II.  FINDINGS OF FACT

The Elizabeth Street Garden, located at 207 Elizabeth Street, New York, NY 10012, in a neighborhood commonly called Nolita, is "a beautifully landscaped, publicly accessible open green space" that "incoporat[es] numerous sculptural elements." Reiver Decl. ¶ 3.

In 1991, Plaintiff's father, Allan Reiver, through his wholly-owned corporation, Elizabeth Street, Inc., entered into a month-to-month lease with the City for the lot at 207 Elizabeth Street. Zilkha Decl. ¶ 2; *see* Lease; Reiver Decl. ¶ 4. The Lease provides that the "Premises shall be used for no other purpose than storage of sculptures," and the tenant "must not change or add to the Premises without the prior written consent of" the City. Lease §§ 5, 19.

Before Plaintiff's father obtained the lease, the lot was "a dismal junk yard." Reiver Decl. ¶ 4. Plaintiff's father had a gallery and, according to Plaintiff's prior testimony in state court, used

5

the lot as "an outdoor extension of the gallery," which was not originally open to the public. Reiver Tr. at 33:7; *see id.* at 35:7–16. According to the City, Plaintiff's father decided to "open the front gates," and "the community really got engaged," in 2013, only after Plaintiff's father learned that the City was planning to "develop the space." Zilkha Decl. ¶ 2;[2] *see* Sandler Decl. ¶ 24.

There is no dispute that Plaintiff's father "initially . . . created" the Garden. Reiver Decl. ¶ 5; *see id.* ¶ 16–20; Reiver Tr. at 30:18–19 ("He built the Garden."); *see id.* at 30:18 ("My father placed [the largest statues]."); *id.* at 33:21–32 ("It was from the start . . . a passion of my father to build a landscape garden that showcased these pieces as an outdoor extension of the gallery."). Plaintiff "subsequently joined" the project. Reiver Decl. ¶ 5; *see id.* ¶ 16–20. Plaintiff avers that, at first, he was merely "helping [his father] place various sculptural elements and learning about his [father's] sense of design for the garden." Reiver Decl. ¶ 17. However, Plaintiff avers, he later "took on greater responsibility in the design process, such as placing the standing lions on either said of the main walkway." Reiver Decl. ¶ 18.

"The Garden is currently managed, maintained, and operated by Elizabeth Street Garden, Inc., a volunteer-based not-for-profit corporation." Reiver Decl. ¶ 2. Plaintiff avers that members of "the community" are "active participants in its evolving artistic narrative." Reiver Decl. ¶ 11; *see id.* ¶ 13. Plaintiff "initiate[s] and organize[s]" opportunities for community engagement, such as, for example, "open calls to artists, which showcase artwork inspired by the Garden, musical performances, poetry readings, movie screenings, wellness classes like tai chi and yoga, tea ceremonies, educational workshops teaching sustainable stewardship and planting in the Garden to local public-school students." Reiver Decl. ¶ 12.

---

[2] (Quoting from a video of Plaintiff speaking to the New York City Planning Commission in 2019, *available at*, https://www.youtube.com/watch?v=kvffalPQ-Qk&t=7720s).

6

Plaintiff contends that the City "plans to destroy the Garden." Reiver Decl. ¶ 28. There is no dispute that the City intends to use the lot to build affordable housing for seniors, a project the City calls "Haven Green." Sandler Decl. ¶ 5. In 2018, the City "assigned the Lease to the New York City Department of Housing Preservation and Development." Zilkha Decl. ¶ 3; *see id.*, Ex. B. The City Council thereafter voted to build Haven Green. Sandler Decl. ¶ 30. According to the City, its plan includes "publicly accessible open space." Sandler Decl. ¶ 33.

In 2019, Elizabeth Street Garden, Inc., Plaintiff's father, and others (although not Plaintiff) commenced an Article 78 proceeding, in the Supreme Court of New York, to prevent the City from proceeding with Haven Green [ECF No. 16-5]. The New York Court of Appeals ultimately ruled in favor of the City. *See Elizabeth St. Garden, Inc. v. City of N.Y.*, 42 N.Y.3d 992, 995 (2024). Meanwhile, the City has served Elizabeth Street Garden, Inc. with an eviction notice, and the First Department has affirmed a judgment granting possession of the premises to the City. *City of New York v. Elizabeth St. Inc.*, 85 Misc. 3d 131(A) (1st Dep't 2025).

### III. CONCLUSIONS OF LAW

"It is well established that in this Circuit the standard for an entry of a [temporary restraining order] is the same as for a preliminary injunction." *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008); *see Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*, 190 F. Supp. 2d 577, 580 (S.D.N.Y. 2002). To obtain such emergency relief, a plaintiff must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 667 (2d Cir. 2023) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).[3] "Such relief, however, 'is an extraordinary and

---

[3] "When 'a preliminary injunction will affect government action taken in the public interest pursuant to a statute or regulatory scheme, the moving party must demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood

7

drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

Plaintiff has not shown that he is likely to succeed on the merits of his claim under VARA, however. The statute, Section 106A, which is entitled "Rights of certain authors to attribution and integrity," provides in pertinent part that "the *author* of a work of *visual art*" has the right "to prevent" the "destruction of a work of recognized stature." 17 U.S.C. § 106A(a)(3)(B) (emphases added). The author of a work of visual art also has the right "to prevent any intentional distortion, mutilation, or other modification of that work which would be prejudicial to his or her honor or reputation." 17 U.S.C. § 106A(a)(3)(A). Plaintiff has not made a clear showing that the Elizabeth Street Garden is a work of visual art within the meaning of the statute or that Plaintiff is an author of the Elizabeth Street Garden. As such, Plaintiff has no rights under either subsection (a)(3)(B) or subsection (a)(3)(A) of VARA.[4]

### A. The Garden Is Not a Work of Visual Art within the Meaning of VARA.

In enacting VARA, Congress expressly and narrowly circumscribed its protections. *See* 17 U.S.C. § 106A (citing "section 101"); 17 U.S.C. § 101 ("Definitions"); *Carter v. Helmsley-Spear, Inc.*, 71 F.3d 77, 83 (2d Cir. 1995). Crucial here, the statute provides:

> A "work of visual art" **is** --
> (1) **a** painting, drawing, print, or sculpture, existing in a single copy, in a limited edition of 200 copies or fewer that are signed and consecutively numbered by the author, or, in the case of a sculpture, in multiple cast, carved, or fabricated sculptures of 200 or fewer that are consecutively numbered by the author and bear the signature or other identifying mark of the author; or

---

of success on the merits, and (3) public interest weighing in favor of granting the injunction.'" *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 631 (2d Cir. 2020) (quoting *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 143 (2d Cir. 2016)).

[4] Because Plaintiff fails to make the prerequisite showings that he is an "author," and the Elizabeth Street Garden is a "work of visual art" within the meaning of VARA, the Court need not address whether the Garden is "a work of recognized stature." 17 U.S.C. § 106A(a)(3)(B).

>    (2) **a** still photographic image produced for exhibition purposes only . . . .

17 U.S.C. § 101 (emphases added). The statute further provides that the definition of a work of visual art does not include "any poster, map, globe, chart, technical drawing, diagram, model, applied art, motion picture or other audiovisual work, book, magazine, newspaper, periodical, data base, electronic information service, electronic publication, or similar publication" or "any work not subject to copyright protection," among other excluded categories. *Id.*

The plain text of the statute strictly forecloses expansive interpretations of the term "work of visual art" within the meaning of VARA. *See id.*; *United States v. Gayle*, 342 F.3d 89, 92 (2d Cir. 2003) ("Statutory construction begins with the plain text and, if that text is unambiguous, it usually ends there as well."). Indeed, by using the word "is," rather than includes, in the definition, Congress confined a "work of visual art," under VARA, to the limited categories of traditional visual media expressly identified in the statute. 17 U.S.C. § 101. Specifically, the work must be "a" (meaning one, "single") "painting, drawing, print, or sculpture," or "a" photograph "produced for exhibition purposes only." *Id.* Congress extended this protection to "a limited edition" of the work in certain circumstances. *Id.* Pertinent here, "in the case of *a sculpture*," protection is afforded to "multiple cast, carved, or fabricated sculptures of 200 or fewer that are consecutively numbered *by the author* and bear the signature or other identifying mark *of the author*." *Id.* (emphases added). In light of this statutory text, the Second Circuit has recognized that the definition of a work of visual art under VARA is "narrow." *Carter*, 71 F.3d at 83.

Plaintiff contends that the Elizabeth Street Garden is a work of visual art. *See* Pl. Mem. at 11–13. Indeed, Plaintiff offers several declarations from members of the art world opining that the Garden is a work of visual art. *See* Reiver Decl. ¶¶ 26, 33; Miller Decl. at 2; Biesenbach Decl. ¶

9

4.1; JR Decl. ¶ 8.1; *see also* Chasin Decl. ¶¶ 3, 9.  However, the declarants' expansive views of visual art do not fit within the narrow definition provided by the governing statute.

Reiver and several of his supporters characterize the Elizabeth Street Garden as a work of "social sculpture."  Reiver Decl. ¶¶ 5, 14, 26; Miller Decl. at 12, 15; Biesenbach Decl. ¶¶ 3.2, 4.1; *see* Pl. Mem. at 5–6.  According to Plaintiff's own evidence, a social sculpture is "an expanded category of conceptual art in which human beings and their intrinsic capacity for creativity and change themselves comprise[] artworks in conjunction with each other and the physical world, perhaps most noticeably the natural world."  Miller Decl. at 12.  Plaintiffs' supporters opine that the Elizabeth Street Garden is "entitled to protection" as "a great work of art."  Miller Decl. at 1, 12; *see also* Biesenbach Decl. ¶ 4.2.

The Court does not doubt that the Elizabeth Street Garden is a work of art, as that term is used colloquially or in academic settings.  The problem for Plaintiff is that the Garden itself is not "a" single or limited edition "painting, drawing, print, or sculpture" or a photograph "produced for exhibition purposes only . . . ."  17 U.S.C. § 101.[5]  Based on Plaintiff's own evidence, a "social sculpture," Miller Decl. at 12, is very different from the "cast, carved, or fabricated sculptures" contemplated by VARA, 17 U.S.C. § 101.  By defining a protected work of visual art "in terms both positive (what it is) and negative (what it is not)," *Carter*, 71 F.3d at 84, Congress made clear that VARA does not protect "an expanded category of conceptual art," Miller Decl. at 12.  As such, the Elizabeth Street Garden is not a work of visual art under VARA.

---

[5] Plaintiff cites a bit of legislative history that points courts interpreting VARA to "generally accepted standards of the artistic community." H.R. Rep. No. 514, 101st Cong., 2d Sess. at 11 (1990), reprinted in 1990 U.S.C.C.A.N. 6915, 6921.  However, the Supreme Court has long instructed inferior federal courts that, when statutory "text is plain and unambiguous," the court should "not accept [an] invitation to consider the legislative history."  *Whitfield v. United States*, 543 U.S. 209, 215 (2005).  As set forth above, VARA unambiguously states that a "work of visual art ***is*** . . . a painting, drawing, print, or sculpture" or a photograph "produced for exhibition purposes only . . . ."  17 U.S.C. § 101 (emphasis added).

Plaintiff maintains that the Garden is a work of visual art in addition to a social sculpture. Reiver Decl. ¶ 26. Specifically, Plaintiff argues that "the Reivers created a single unified and thematically integrated sculpture" by "strategically" placing "stone urns, statues, columns, and other neoclassical architectural features" among "specially curated organic plantings." Pl. Mem. at 13 (citing *Carter*, 71 F.3d at 84). Plaintiff's reliance on *Carter* is misplaced, however. In that appeal, the Second Circuit held that it was not "clearly erroneous" for the district court to conclude that "all the sculptural elements contained in [a] building's lobby" were collectively a single work of visual art because, the district court found, a group of "professional sculptors who work[ed] together and [were] known collectively" by a single name had been commissioned to create "a very large 'walk-through sculpture' occupying" the lobby in question. *Carter*, 71 F.3d at 80, 84.

The evidence before this Court, however, does not support finding that the Elizabeth Street Garden is one, singular "very large 'walk-through sculpture.'" *Id.* at 80. Rather, as Plaintiff avers in his own declaration, the Garden is "a beautifully landscaped . . . green space" that "incoporat[es] numerous sculptural elements." Reiver Decl. ¶ 3. In other words, the Elizabeth Street Garden is a garden that contains numerous sculptures. The Garden is not a sculpture itself. *See* Reiver Tr. at 33:21–32 (Plaintiff's father "buil[t] a landscape garden that showcased . . . pieces as an outdoor extension of [his] gallery"). "To qualify for moral-rights protection under VARA," however, the Garden "cannot just be . . . 'sculptural' in some aspect or effect, it must actually *be* . . . a 'sculpture.' Not metaphorically or by analogy, but *really*." *Kelley*, 635 F.3d at 300 (emphases in original).

As Plaintiff acknowledges in his brief, several federal courts have been asked to conclude that a garden, or other "green space," *id.*, was work of visual art within the meaning of VARA, but no court has reached that conclusion. *See* Pl. Mem. at 13–16; *Kelley v. Chicago Park Dist.*, 635 F.3d 290, 306 (7th Cir. 2011); *Phillips v. Pembroke Real Est., Inc.*, 459 F.3d 128, 137 (1st Cir.

11

2006); *Eng. v. BFC&R E. 11th St. LLC*, No. 97-cv-7446 (HB), 1997 WL 746444, at *3 (S.D.N.Y. Dec. 3, 1997), *aff'd sub nom.*, *Eng. v. BFC Partners*, 198 F.3d 233 (2d Cir. 1999). In its well-reasoned and well-supported opinion in *Kelly*, the Seventh Circuit held that the garden at issue was "neither 'authored' nor 'fixed' in the senses required for basic copyright" and was therefore ineligible for "protection under VARA." *Kelley*, 635 F.3d at 306. As noted above, VARA protects the rights of the "author of a work of visual art" and expressly excludes from the definition of a work of visual art "any work not subject to copyright protection." 17 U.S.C. §§ 101, 106A. The Seventh Circuit reasoned that "gardens are planted and cultivated, not authored." *Kelley*, 635 F.3d at 304. Moreover, "fixation" is prerequisite for copyright protection, but a "garden's constituent elements are alive and inherently changeable, not fixed." *Id*. 304.

The Court is persuaded by the reasoning in *Kelly*. Plaintiff attempts to distinguish *Kelly*, contending that the "sculptural elements" of the Elizabeth Street Garden "satisfy the fixation requirement" and "the forces of nature play a secondary role, at best." Pl. Mem. at 16. However, in his own declaration, Plaintiff stresses the ever "evolving nature of the Garden's design." Reiver Decl. ¶ 13; *see id.* ¶¶ 11 (the Garden is an "evolving artistic narrative"), 13 ("it is a dynamic, living entity"), 34 ("an evolving artistic expression that has been nurtured over the years"); *see also* Biesenbach Decl. ¶¶ 3.2, 3.4, 3.5; Brodie Decl. ¶ 8; Chasin Decl. ¶ 8.

Moreover, while Plaintiff dismisses as "secondary" the natural elements of the Garden in his brief, Pl. Mem. at 16, Plaintiff submits in his sworn declaration that the natural, living (and, thus, inherently changeable) elements of the Garden are both essential and formative. *See* Reiver Decl. ¶¶ 13, 19, 35 (the Garden is a "unique blend of art and nature"). Indeed, Plaintiff avers that he has learned to "balanc[e]" his own artistic "vision with the need to listen to the garden" and "accept[] how it grows organically." Reiver Decl. ¶ 19. Plaintiff's supporters from the art world

12

similarly attest to the essential role of nature in the Garden. *See* Biesenbach Decl. ¶ 3.5 ("As the seasons change and the community engages with the space, the Garden becomes an ever-evolving artwork."); JR Decl. ¶¶ 5.1, 6.3; Brodie Decl. ¶ 8 ("The interplay of natural elements with curated sculptures creates a dynamic environment that evolves with the seasons, offering a continuously changing experience."); Smith Decl. ¶ 12. As such, based on Plaintiff's own evidence, the Garden is not fixed as required for protection under VARA. *See Kelley*, 635 F.3d at 306.

### B. Plaintiff Is Not an Author of the Garden within the meaning of VARA.

Relatedly, the Court concludes that Plaintiff is not an author of the Elizabeth Street Garden within the meaning of VARA. As the *Kelly* court observed, it defies common understanding to speak of the "author" of a garden. *See Kelley*, 635 F.3d at 304 ("gardens are planted and cultivated, not authored"); Reiver Decl. ¶ 19 (acknowledging that Plaintiff must "accept[] how [the Garden] grows organically"). Further, while there are manmade works in the Garden, by his own admission, Plaintiff did not make them. *See* Reiver Decl. ¶¶ 17, 18. Rather, he has "place[d] various sculptural elements" created by others. Reiver Decl. ¶ 17; *see id.* ¶ 18. VARA, however, expressly contemplates that the "author" of a series of sculptures is the person who "cast, carved, or fabricated" them. 17 U.S.C. § 101.

Moreover, supposing, *arguendo*, that there is an author of the Elizabeth Street Garden, the evidence establishes that the author is Plaintiff's father, and not Plaintiff. Plaintiff acknowledges that his father "initially . . . created" the Garden. Reiver Decl. ¶ 5. Plaintiff has previously testified under oath in state court that his father "built the Garden." Reiver Tr. at 30:18–19; *see id.* at 33:21–32. Plaintiff now contends that he is a "co-author" because he later "joined [his] father in the design of the Garden, culminating in its present [form]." Pl. Mem. at 1, 11; Reiver Decl. ¶ 16. Plaintiff acknowledges that, at first, he merely helped execute his father's vision. *See* Reiver Decl.

¶ 17.  Thereafter, Plaintiff avers, he "took on greater responsibility in the design process, such as placing the standing lions on either said of the main walkway."  Reiver Decl. ¶ 18.

It is well-established, however, that mere "collaboration alone is not sufficient to establish joint authorship."  *Thomson v. Larson*, 147 F.3d 195, 200 (2d Cir. 1998).  As Plaintiff testified in state court, "It was from the start" his father's passion project "to build a landscape garden that showcased . . . pieces as an outdoor extension of [his] gallery."  Reiver Tr. at 33:21–32.  Plaintiff's contribution of adding certain sculptures, even "significant" sculptures, is not, by itself, enough to make Plaintiff a co-author.  *Thomson*, 147 F.3d at 202.  Furthermore, while Plaintiff's father may have wished to "pass on" the project to his son, Reiver Decl. ¶ 16, "rights [under VARA] cannot be transferred," *Carter*, 71 F.3d at 83.

Further supporting its finding that Plaintiff is not the "author" of the Garden, the Court observes that, according to Plaintiff, many other people also contribute to the Garden.  Indeed, the Garden is "managed, maintained, and operated by . . . a volunteer-based not-for-profit corporation."  Reiver Decl. ¶ 2.  Moreover, members of "the community" are "active participants in its evolving artistic narrative."  Reiver Decl. ¶ 11; *see id.* ¶ 13.  Plaintiff's current role in "organiz[ing]" community events, Reiver Decl. ¶ 12, is not similar to his father's role in designing and building the Garden, let alone similar to carving a statue.  In any event, Plaintiff's assertion that, after he joined his father in designing the Garden, it "culminat[ed] in its present [form]," Reiver Decl. ¶ 16, flatly contradicts Plaintiff's representation that the "Garden's design" remains ever "evolving," Reiver Decl. ¶ 13.  That Plaintiff invites schoolchildren to practice "planting in the Garden," Reiver Decl. ¶ 12, lays bare the pretense that the Garden is Plaintiff's personally-authored masterwork of visual art such that federal law bestows on him a moral right to prevent

its "modification." 17 U.S.C. § 106A(a)(3)(A).

## IV. CONCLUSION

Because the Court concludes that the Elizabeth Street Garden is not a "work of visual art" within the narrow definition of that term under VARA, and Plaintiff is not an "author" within the meaning of the statute, the Court concludes that Plaintiff has not shown that he is likely to succeed on the merits of his VARA claim. *See JTH Tax, LLC*, 62 F.4th at 667. As such, Plaintiff is not entitled to the "extraordinary and drastic remedy" of preliminary relief. *Moore*, 409 F.3d at 510. The Court need not reach the other requirements for obtaining a temporary restraining order or a preliminary injunction. The Court simply notes that while, undoubtedly, many people wish to see the Elizabeth Street Garden remain intact, there is also a strong public interest in bringing the years-long multi-court litigation over the Garden to an end. *See United States v. Lavender*, 583 F.2d 630, 632 (2d Cir. 1978).

Accordingly, Plaintiff's application for a temporary restraining order and a preliminary injunction is DENIED.

**SO ORDERED.**

Date: **March 20, 2025**
**New York, NY**

*Mary Kay Vyskocil*
**MARY KAY VYSKOCIL**
**United States District Judge**